LILLIAN F. JACKSON v. JOHN R. MILLER et al.; JOHN M. JACKSON et al., Appellants.

Division One, June 6, 1921.

1. **DEED: Mistake as to Legal Effect.** A widow, with minor children and in great mental distress, was advised by her brother-in-law that, if she would convey her real estate to him and let him convey it back to her, she would have entire ownership, control and right of disposition during her life, and upon her death it would go directly to her children; and in accordance with such advice she conveyed the property to him for life, with remainder to the heirs of her body. The deeds were without consideration, and made in the honest belief that if made she could dispose of the property at any time to secure means to support and educate her

children.  In a suit by her to cancel the deeds, a guardian *ad litem* was appointed for the defendant children, and he alone appeals.  *Held*, that the deeds should be set aside.

2.  ————:  ————:  Interest of Unborn Remaindermen.  And such deed should be set aside, although said widow may yet have other children who will survive her and become remaindermen.  Since all the living children are made parties, cancellation of the deeds will not be denied on the possibility that there may be future issue not now *in esse*.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Cleary & Barnett* for appellants.

(1)  The judgment and decree of the trial court should not have been entered.  The rules of equity require that all those interested in the subject-matter of the litigation must be brought into court.  This was not done, for the reason that the heirs of the body of plaintiff cannot be determined until the time of her death. The word "heirs" does not mean "children."  Emerson v. Hughes, 110 Mo. 627.  No one has heirs while living. The minors involved in this case are now the only children of the plaintiff, but she has not passed the age when she would be incapable of bearing other children. Consequently, at the time of her death some of her present children may not be living and other children may have been born to her.  If any of the present children should die during the lifetime of the mother, leaving issue, then that issue would be an heir, and not the parent.  It will, therefore, be seen that it is impossible to get all of the parties interested in the remainder of the estate in the property herein involved into court at this time.  The rights of those not properly in court cannot be adjudicated.  As to them, the decree would have no effect.  Lockridge v. Mace, 109 Mo. 162; Rozier

v. Graham, 146 Mo. 352. (2) We have been unable to find any case exactly like the case at bar, but we beg to refer the court to certain cases in which the doctrine of representation has been denied, which cases are in point, at least, by analogy: Downing v. Sprecker, 35 Md. 474; Ex parte Miller, 90 N. C. 625; Overman v. Simms, 98 N. C. 437; Breit v. Yeaton, 101 Ill. 242; Monarque v. Monarque, 80 N. Y. 320; Barnes v. Luther, 77 Hun, 234, 28 N. Y. Supp. 400. (3) There was not sufficient evidence to warrant the court in setting aside the deeds from the plaintiff to Miller and from Miller back to the plaintiff. There are two grounds alleged in the petition—possibly three: (a) Lack of consideration, (b) mental incapacity, and (3) legal fraud. As to the first, the deed expresses and imports a consideration, and it may not therefore be destroyed by parol evidence to the effect that there was no consideration. Devlin on Real Estate (3 Ed.) par. 834, p. 1501. The entire transaction must be looked into as a whole, and by so doing it becomes apparent that the true consideration was love and affection for plaintiff's children, which is a good consideration. Studybaker v. Cofield, 159 Mo. 596; 2 Devlin on Real Estate (3 Ed.) par. 806. The evidence is insufficient to prove mental incapacity. No fraud on Miller's part, even legal fraud, was shown, for he was not seeking any benefit or gain for himself. It was, at most, a mere error of judgment of her agent, intending and striving to act honestly in behalf of the plaintiff.

*Scarritt, Jones, Seddon & North* for respondent.

(1) It is conceded that everyone that could possibly be made a party, in his own person, is in court. It further appears that the petition charges that the children of plaintiff, Mrs. Jackson, are made parties not only in their own right, but as representing the whole of the class that may compose the "heirs of the body" of Mrs. Jackson. No suggestion is made that any persons

not now in being, that might possibly hereafter acquire an interest, could have been brought into court in any other manner. If the theory of the learned guardian *ad litem* is correct, then Mrs. Jackson could not maintain this suit until it was fully determined who were the heirs of her body, and that could not be determined until her death. The argument carried to its logical result is, necessarily, that no matter under what circumstances of mentality or fraud Mrs. Jackson may have deeded her property, she is powerless to seek relief in her lifetime, because, if the deeds as written stand, there is a bare possibility that others not now in being, that cannot be directly made parties to a suit, might secure an interest by reason of such deeds. It is by reason of circumstances and situations such as we have here that the doctrine of parties by representation has arisen and been so often applied. It is a doctrine growing out of necessity. Faulkner v. Davis, 18 Gratt. 651. (2) This equity doctrine of parties by representation is so old and well established, and the reasons and necessity therefor so apparent, that we think it would not be appropriate to more than cite some of the leading cases. Hopkins v. Patton, 257 Ill. 346; Thompson v. Adams, 205 Ill. 552; Temple v. Scott, 143 Ill. 290; McCampbell v. Mason, 151 Ill. 500; Hale v. Hale, 146 Ill. 227; Gifford v. Hart, 1 Sch. & L. 408; Harrison v. Wallton, 95 Va. 721; Faulkner v. Davis, 18 Gratt. (59 Va.) 690; Wilson v. Schaefer, 107 Tenn. 300; Champlin v. Champlin, 4 Edw. (N. Y.) 228; Sikemeier v. Galvin, 124 Mo. 367; Reinders v. Koppelman, 68 Mo. 482; Mead v. Mitchell, 17 N. Y. 210; Gavin v. Curtin, 171 Ill. 640; Freeman v. Freeman, 56 Tenn. 301; Bofil v. Fisher, 3 Rich. Eq. 1. (3) The doctrine of representation can be applied in the case at bar with less doubt and concern than in most of the reported cases, because, in the latter, the parties not *in esse* actually had an interest in the property in question, but in this case the allegation, the proof and the finding of the trial court is that the deeds in question were a nullity,

so that neither the present children of Mrs. Jackson nor any other possible heirs of her body acquired any interest in the property here in question. (4) The evidence fully justifies the court in setting aside the deeds here in question because of the mental condition of Mrs. Jackson, because the conduct of the other contracting party, Mr. Miller, was such as to amount to legal fraud, because there was a mutual mistake, and the deeds did not embody the intention of even Mr. Miller. (5) Besides all this, there was absolutely no consideration given or received in the transaction. The common sense of the situation is that the grantees here, having paid no consideration, cannot possibly be injured by the setting aside of these deeds. As the "heirs of the body" of Mrs. Jackson paid nothing and parted with nothing for their apparent interest in the property in question, under the deed from Miller to Jackson, they can lose nothing by having the same set aside.

WOODSON, P. J.—The plaintiff brought this suit in the Circuit Court of Jackson County against the defendants to set aside and cancel two certain deeds mentioned in the pleadings and evidence, conveying certain lots of ground in said city to the defendants, by the plaintiff. The decree of the court was in favor of the plaintiff, and the guardian *ad litem* of the infant defendants duly appealed the cause to this court.

The defendants John R. Miller and wife filed an answer, in which they admit that at the time that the deeds were made they had no idea that by the execution of them they were depriving plaintiff from selling, mortgaging or otherwise disposing of the property.

The facts are few and undisputed, and are thus stated by counsel for the respondent:

"The facts of this case are few and simple. Plaintiff, Lillian F. Jackson, is a widow in very moderate circumstances, and has four minor children, and it is incumbent upon her to provide for herself and children, and to rear and educate them.

"Prior to the death of her husband, in October, 1917, plaintiff was the owner in fee simple of the several lots or tracts of real estate described in the petition. For several years before her husband's death, the latter was greatly afflicted, both physically and mentally, and the burden of his care, as well as that of herself and children, was thrust upon Mrs. Jackson. The condition of her husband was such that it finally culminated, on October 30, 1917, in his committing suicide. The mere statement of these facts, without other evidence, is sufficient to indicate the physical and mental condition of Mrs. Jackson immediately after her husband's death. During the few years before her husband's death, Mrs. Jackson had relied upon defendant, John R. Miller, her sister's husband, to look after her business affairs, as her time and attention were taken up with the care of her children and afflicted husband, and after her husband's death, and in her prostrated condition immediately thereafter, she naturally leaned even more upon her brother-in-law. This brother-in-law conceived the idea that he could aid and protect Mrs. Jackson and her children in the matter of the property she owned by having the title held by her other than in fee simple, as it was then held. He thereupon advised her that it would be wise to deed the property to him and let him deed it back, so that she would have entire ownership, control and right of disposition during her life, but so provided that in case of her death it would go directly to the children. Being ignorant of such matters, and being in such physical and mental condition at the time that she was wholly incapable of thinking or acting for herself, or even suggesting that they had better take legal advice, she simply left it to Mr. Miller. He thereupon drew a deed conveying all of her property to him. He paid no consideration whatever. He thereupon deeded the property back to Mrs. Jackson for life, with remainder to the heirs of her body. This was in December, 1917. So the matter stood until some time in 1920, Mrs. Jackson found it necessary to dispose of some of this property in order

to secure means to provide for and educate her children. Her brother-in-law, Mr. Miller, placed some of the property on the market and found a purchaser, and a contract of sale was entered into. Upon the title being examined by an attorney, it was then for the first time discovered by Mrs. Jackson and by Mr. Miller just the shape into which the title had been put by the deeds he had drawn and had executed. The lawyers advised them that these deeds did not carry out the idea that Mr. Miller had in mind, but had placed the property in such a condition as to make it practically impossible of disposition. Thereupon Mrs. Jackson, for the first time, sought legal advice, and this suit was brought to cancel and set aside the deeds of December 19, 1917, from herself to Mr. Miller and from Mr. Miller and wife to her. The grounds for annulling these deeds are several: (1) Deeds are mere contracts and there was never a meeting of the minds of the parties to these deeds. There was a mutual mistake. The instruments, as written, did not portray what either party had in mind. (2) The physical and mental condition of Mrs. Jackson was at that time such that she was incapable of thinking and acting for herself, and while in such condition she was easily misled by the advice and importunities of her brother-in-law. His action in taking advantage of her then physical and mental condition, and in undertaking to advise her and in inducing her to execute the deeds in question, without securing competent legal advice, amounted to legal fraud, although he may have been acting in the utmost good faith and with an honest desire to assist her. (3) The deeds were made without any consideration whatever.

"This suit is brought against John R. Miller, to whom Mrs. Jackson deeded her property at his request, and against his wife, who joined in the deed conveying the property back to Mrs. Jackson for life, with remainder to the heirs of her body. The four children of Mrs. Jackson, being all the present issue of her body,

were also made parties defendant.  The appellant, John M. Cleary, was appointed by the court as their guardian *ad litem*.  It is alleged in the petition that these children are made parties as representing their own interests, and also as representing the whole class of the 'heirs of the body' of Mrs. Jackson.  All parties, now in being, having any possible interest in the property in question, were made parties to this suit. Upon a hearing, the trial court found for plaintiff, and set aside the deeds in question, and the guardian *ad litem* of the infant defendants, acting with a caution and diligence that is commendable in one serving in such a capacity, has appealed to this court.''

This court is asked to reverse the decree of the circuit court for two reasons, and the first is stated in this language:

''The plaintiff, as before stated, may yet have other children who may survive her and become remaindermen, or her present children may die prior to her death, leaving issue, and such issue, on the death of the plaintiff, would become remaindermen and would take under the deed as purchasers and not as heirs of their parents.''

In support of this proposition counsel cite the case of Lockridge v. Mace, 109 Mo. 162.  We have carefully read that case, and are unable to see in what way it supports the contention of counsel.  It simply holds that an executory devise to the unborn child of an unborn child is void, as being against the rule of perpetuity. The facts of that case in brief were these:  A testator devised real estate to his wife for life, remainder to his son, seven years of age, for life, remainder to the son's children for life, remainder to the son's grandchildren in fee.  Upon those facts this court very properly held that where a devise constitutes but one disposition of property and is void for remoteness, it is void *in toto*.

This case is more nearly like the case of Reinders v. Koppelmann, 68 Mo. 482.  In that case it was held that partition of real estate would not be denied because there

was a contingent estate in the land, which may hereafter be vested in persons not yet *in esse*. It was also there held that those not *in esse* were represented by those who took subject to their rights, and that partition or sale was conclusive as to the parties not *in esse*. While it is true that the decision in that case was based upon a statute authorizing the decree there rendered, yet I am unable to see what probative force the statute mentioned could have, without the parties *in esse* had the legal authority to represent those not *in esse*. That statute did not undertake to give those *in esse* the legal right to represent those not *in esse,* but that authority was attributable to the General Practice Act of the State. It must follow as a legal proposition that if those *in esse* did not have the authority to represent those who were not, then the statute mentioned would have been unconstitutional, null and void as to those not *in esse,* because it would be taking their property without due process of law within the meaning of both the State and Federal constitutions. The mere fact that the Reinders-Koppelmann case was a partition suit can in no wise make any difference in the principle of law involved in that case and this one. For the manifest reason both deal with title and the one just as effectually as the other.

We therefore rule this point against the appellants.

It cannot be gainsaid that a decree in the partition of land is just as effectual to establish title to real estate as would be a deed or other conveyance made for that purpose (Holladay v. Langford, 87 Mo. 577); and if it conveys the title, what possible difference in principle can it make whether it was by deed or decree of court? I respectfully submit, none whatever.

It is next insisted by counsel for appellants that there was not sufficient evidence to warrant the court in setting aside the deeds from the plaintiff to Miller and from Miller back to the plaintiff. We are unable to lend our concurrence to this insistence. The answer of Mr. and Mrs. Miller, who seem to be perfectly frank and

fair in the matter, and the testimony of respondent, fully establish every fact stated in the statement of the case, and by comparing that statement with the statement of the case as made by counsel for appellants it will be seen that they agree in almost every detail, in fact, this opinion could have been predicated upon the statement of the case made by counsel for appellants, as upon that of respondent. There is no merit in this insistence.

Finding no error in the record the judgment is affirmed. All concur.